# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **RICHARD B. LAY** | **CIVIL ACTION NO. 11-620-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **DR. FULLER, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Richard B. Lay ("Plaintiff"), pursuant to 42 U.S.C. § 1983.  This complaint was received and filed in this court on April 15, 2011.  Plaintiff is incarcerated at the Winn Correctional Center, but claims his civil rights were violated by prison officials while incarcerated at the David Wade Correctional Center in Homer, Louisiana.  He names Dr. Fuller, Jerry Goodwin, Lonnie Nail, William Kline, Mark Hunter, James LeBlanc, Assistant Warden Arnold, Col. Benson, Robert Tanner, Jerry Primes, and Howard Prince as defendants.

Plaintiff claims that on March 28, 2011, he was transferred to David Wade Correctional Center from the Rayburn Correctional Center.  He claims that his initial classification decision to extended lock-down was without notice or hearing and is not appealable because 90 days have elapsed.  He claims he was placed on extended lock-down

for a Rule 5 violation and a false Rule 3 violation and a false Rule 5 violation.

Plaintiff claims that on November 8, 2007, he was given a permanent medical duty status for various physical conditions which he still has.  He claims he has a cardiac condition, high blood pressure, degenerative joint disease, acid reflux, a pinched nerve, fluid in his joints, high cholesterol, low potassium, high triglycerides, prostrate problems, and testicle swelling.  He claims this duty status's restrictions and/or limitations included no pulling, no pushing, no lifting greater than twenty pounds, and a bottom bunk.  He claims the duty status also included that he was to elevate his feet as needed, no prolonged walking or standing, may use clippers to shave, TED Hose, flex cuffs, extra pillow and blanket, and orthopedic shoes.

Plaintiff claims that upon his arrival at David Wade Correctional Center, he was issued a different duty status for thirty days.  He claims that on April 1, 2011, he saw Dr. Fuller for a medical duty status.  He claims he was told that David Wade Correctional Center did not issue permanent duty statuses.  He claims he was told that his duty status would be different than the one issued at his prior facility.  He claims the duty status issued by Dr. Fuller was regular with restrictions including walking limited to 1/4 of a mile, no lifting more than 20 pounds, and no sports at all.  Plaintiff claims that on April 1, 2011, he wrote to Assistant Warden Michele Dauzat to complain about his medical duty status.  He claims she never responded to his complaint.

Plaintiff claims that on April 6, 2011, he learned that Dr. Fuller had discontinued the omega-3 fish oil ordered at Rayburn Correctional Center because of his elevated level of

cholesterol deposits.  Plaintiff claims that on April 7, 2011, he filed an emergency grievance.

Plaintiff claims the medical duty status issued by Dr. Fuller will cause him pain, injury, and discomfort.  He claims the use of restraints and not flex cuffs causes swelling and pain in his joints because he has chronic problems with fluid.  He claims he cannot stand or walk 1/4 of a mile due to his chronic problems with numbness and pain from his neck to his feet.  He also worries that he might fall because of the loss of feeling in his legs.  He claims he cannot climb onto the top bunk because of his conditions.

Plaintiff claims that on April 18, 2011 he was transferred to Hunt Correctional Center.  He claims that on August 8, 2011, he was transferred back to David Wade Correctional Center.  He claims he was reassigned to extended lock-down even though his disciplinary sentences were reversed and not re-instated by the disciplinary board.

Plaintiff claims he was placed on a hot tier without a proper ventilation system and only one fan.  He claims his cardiac specialist instructed that he avoid heat exposure and sudden temperature changes which could result in a heart attack, stroke, and/or death.

Plaintiff claims he has been denied access to the law library and legal assistance.  He claims he was not provided with a sufficient amounts of paper, ink pens, and mailing envelopes per month.  He claims the prosecution of his criminal matters and drafting of his petitions for the appellate courts was delayed.  Plaintiff admits that he did not suffer specific harm in his cases.

Plaintiff claims he was denied all medications and treatments that he was receiving while incarcerated at Rayburn Correctional Center.  He admits that he was prescribed

Prilosec and Norvac.  However, he claims the Prilosec was prescribed in the wrong dose and the Norvac as ordered can cause a stroke, heart attack, and/or death.  Plaintiff also claims the prison doctors prescribed Celebrex, Tylenol, and IBU for him without notice of the dangers of these drug combinations which include chest pains and stomach problems.  He claims he received no physical examinations or tests while incarcerated at David Wade Correctional Center.

Plaintiff claims that Defendant LeBlanc refused to interfere with the medical decisions made by the prison medical staff.

As relief, Plaintiff seeks an appropriate medical duty status, continuation of his omega-3 fish oil, and declaratory and injunctive relief as necessary.

## LAW AND ANALYSIS

**Medical Care**

Plaintiff claims he was denied adequate medical care for his pre-existing medical conditions.  He claims he was denied his previously prescribed medications and duty status.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the

evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994).  It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976).  Further, the plaintiff must establish that the defendants possessed a culpable state of mind.  See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.  In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs.  To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.  It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.  Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997);  Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  Plaintiff made a routine sick call on August 12, 2011, because of chest

pain, testicle pain, pain and numbness in his spine, neck, hip, shoulder, hands, and feet, stomach and throat pain, and adjustment of his medications (Doc. 38-4, p. 15).  On August 22, 2011, Plaintiff made a request for medical treatment because of pain in his right testicle, pain in his neck, back, and joints, numbness and tingling, and adjustment of his medications (Doc. 38-4, p. 18).  From the documentation provided by Plaintiff, he was seen on August 23, 2011 by Dr. Fuller but became upset during the examination and left the room.  After this examination and a review of his medical records, his treatment plan was continued and he was not given a duty status (Doc. 38-1 p. 11).

Plaintiff also made numerous sick calls, including calls  on August 24, 2011 (Doc. 38-4, p. 17), September 1, 2011 (Doc. 38-4, p. 19), September 8, 2011 (Doc. 38-4, p. 20), September 9, 2011 (Doc. 38-4, p. 21), November 23, 2011 (Doc. 38-2 p. 2), November 27, 2011, December 14, 2011 (Doc. 38-2, p. 6), January 11, 2012, and January 20, 2012 (Doc. 38-2, pp. 7, 8).

Plaintiff admits that he was given a duty status and prescribed medicines.   As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.  Furthermore, In Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir.1999), the Fifth Circuit found that the failure of a prison doctor to follow the recommendations of an outside treating physician did not present a material fact issue for deliberate indifference. Rather, it indicated that the doctors had differing opinions as to the appropriate method of treatment under the circumstances.  Therefore, the medical staff at David Wade Correctional

Center was under no obligation to follow the recommendations of non-prison physicians. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort.  However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988).  The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).   Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical claims should be dismissed with prejudice as frivolous.

**Access to the Courts Claims**

Plaintiff claims prison officials denied him access to the law library and legal assistance.  Prisoners  have a constitutional right of meaningful access to the courts. Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).   However, this constitutional guarantee is not without limitation.  Lewis v. Casey, 518 U.S. 343 (1996)  (quoting Turner

v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).  In Lewis v. Casey, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in Bounds v. Smith, 430 U.S. 817, (1977) which is the source of a prisoner's constitutional right to "meaningful access to the courts."  While the Supreme Court reaffirmed a prisoner's right of access to the courts in Lewis, the Court limited the parameters of Bounds and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation. In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement  is derived from the doctrine of standing.  Lewis, 116 S.Ct. at 2179.  The Court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment.  In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983.  The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct.  Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claims are frivolous.  Clearly, Plaintiff has not satisfied the "actual injury" requirement.   Plaintiff has failed to demonstrate that he lost the right to commence,

prosecute, or appeal any suit as a result of the alleged denial of access to the law library. Plaintiff admits that he did not suffer specific harm in his cases.  Furthermore, Plaintiff's complaint in this court reveals on its face that he was able to clearly present his claims to this court.  Thus, he has failed to state any actual injury.

Accordingly, Plaintiff's claims regarding the denial of access to the courts should be dismissed with prejudice as frivolous.

**Classification**

Plaintiff claims his initial classification decision to extended lock-down for disciplinary reasons was without notice or hearing.  He further claims he was reassigned to extended lock-down even though his disciplinary sentences were reversed and not re-instated by the disciplinary board.  This is not a claim that this Court can resolve.  Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds).  Thus, this Court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in

classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification.  In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)). Thus, the prison officials' decision to place Plaintiff in extended lock-down and the resulting consequences of such decision do not give rise to constitutionally protected liberty interests.

Accordingly, Plaintiff's claims with respect to his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Conditions**

Plaintiff claims he was placed on a hot tier without a proper ventilation system and only one fam.  He claims his cardiac specialist advised that he avoid exposure to heat.  A section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993),

but the requirement remains firmly in place for claims against individual public officials. See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations.  Plaintiff has failed to do so.

Accordingly, Plaintiff's ventilation claims should be dismissed for failure to state a claim on which relief may be granted.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the  time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 11th day of March 2014.

Mark L. Hornsby
U.S. Magistrate Judge